[No. 6710.   Decided September 6, 1907.]

EPHRAIM WRIGHT, *Respondent*, v. COMPUTING SCALE COMPANY *et al., Appellants.*[1]

SALES—BREACH OF WARRANTY—DEFENSES—CONTRACTS—CITY ORDINANCE AS PART OF CONTRACT. In an action upon a warranty of computing scales that it would weigh correctly, to recover losses sustained by reason of false weights, which were not discovered until inspection by a city inspector, an ordinance of the city forbidding the use of any weight or scale until the same is inspected, is a defense to the action, as the ordinance becomes a part of the contract.

SALES—BREACH OF WARRANTY—DAMAGES. The measure of damages upon breach of a warranty that scales will weigh correctly is the sum paid therefor, and does not include losses by reason of false weights, where a city ordinance prohibited the use of any weight or scale until the same was inspected by a city inspector, and such an inspection, or ordinary care on the part of the purchaser, would have disclosed the defect in the scales.

Appeal from a judgment of the superior court for Spokane county, Gilliam, J., entered September 13, 1906, upon findings entered in favor of the plaintiff, in an action for breach of warranty. Reversed.

*J. W. Graves* and *A. G. Gray* (*Post, Avery & Higgins*, of counsel), for appellants.

*Willis H. Merriam*, for respondent.

[1]Reported in 91 Pac. 571.

MOUNT, J.—The respondent brought this action in the court below to recover damages for an alleged breach of warranty of a set of scales for weighing meats. The cause was tried to the court without a jury, and findings and a judgment were entered for the plaintiff as prayed for. Defendants appeal.

Upon the trial the court found the facts substantially in accordance with the allegations of the complaint, the material findings being as follows:

"(2)   That on the 2d day of December, 1903, the plaintiff purchased from the defendants, through their authorized agent at the city of Spokane, Washington, one computing scale at the agreed price of $85; that at the time of said purchase the defendants, as a part of the contract of said purchase, guaranteed the plaintiff in writing that said scale would weigh correctly any article capable of being weighed upon it, which contract of guarantee is shown in plaintiff's exhibit No. E."

This exhibit is as follows:

"Received from Robert Trumbull, 103 S. Howard, $15, as cash payment on one 63-scale, balance of $70 to be paid at the rate of $7 per month, without interest, or a discount of ten per cent of balance will be allowed if balance is paid within thirty days of date hereof.

"Guaranty:   The Computing Scale Co., of Dayton, O., manufacturers of the Moneyweight Scale, together with the Moneyweight Scale Co., of Chicago, do hereby guarantee said computing scale to weigh correctly any article capable of being weighed on it, and should the scale get out of order at any time within two years from the date of shipment, with ordinary use (not dropped or broken), we will repair the same gratis, the purchaser paying the freight or express charges to and from the factory.   Money Weight Scale Company, by T. Delafield, salesman.

"(3)   That on the 2d day of December, 1903, the said scale was delivered to plaintiff by the defendants and the plaintiff paid the defendants on the purchase price thereof the sum of $43.

"(4)   That the plaintiff bought said scale for the special purpose of using it in his place of business, to wit: a meat

market situated in the city of Spokane, Washington, which purpose was known to the defendants, and plaintiff began to use it immediately upon the delivery and continued to use it down to the 24th day of March, 1904, and during the time between the said 2d day of December, 1903, and the 24th day of March, 1904, caused to be weighed upon said scale 2768 sales of beef, 852 sales of pork, 401 sales of mutton, 343 sales of veal, 342 sales of sausage, 75 sales of bacon, 153 sales of ham, 205 sales of poultry, 47 sales of weinnerwurst, 92 sales of liver, 45 sales of head cheese, 145 sales of fish, and 158 sales of lard, relying at all times during said period on the guarantee of the defendants that said scales would weigh correctly.

"(5)  That said scale was, in fact, defective at the time it was delivered to plaintiff on account of being improperly constructed, and remained defective and did not at any time between the dates of December 2, 1903, and 24th day of March, 1904, weigh correctly any article that was weighed upon it, and in fact, on account of such defect and improper construction the said scale weighed each and every article weighed upon it at one-half pound less than its true weight, resulting in a loss to the plaintiff on account of such defects, on every article weighed the value of a half a pound of the article weighed.

"(6)  That on the 24th day of March, 1904, the aforesaid scale was inspected by the inspector of weights and measures of the city of Spokane, Washington, and said inspector found that the said scale was defective and weighed every article that had been weighed upon it one-half pound less than its true weight, and he, therefore, condemned the said scale and the plaintiff was prohibited from using said scale by said officer.

"(7)  That the plaintiff had no knowledge that said scale was defective or was not weighing correctly until the 24th day of March, 1904, when it was inspected, and that he immediately thereafter notified said defendants of said defects, and the defendants removed the said scale from plaintiff's place of business, but failed and refused to pay to plaintiff the $43 plaintiff had paid to them on account of the purchase price of said scale, or to pay plaintiff the amount of the losses he sustained on account of said defects in said scale."

The court then found the prices at which the beef, etc., were sold, and concluded that plaintiff should recover $43 paid for the scale and $338 losses sustained by the underweight of the scales. In the answer the defendants pleaded, as an affirmative defense, a city ordinance of the city of Spokane in force at the time the contract was made, making it unlawful for any person to use any weight or scale used in weighing articles for sale without first having procured a certificate from the city inspector of weights and measures that such scales had been inspected and found correct; that the contract of warranty was made with reference to said ordinance, and that plaintiff failed and neglected to have said scale inspected. The defense was stricken by the court upon motion of the plaintiff.

It was error, without doubt, to strike this defense. The law of the place where a contract is made is as much a part of the contract as though it were expressed therein. 9 Cyc. 582, and cases cited; *Holbrook v. Ives*, 44 Ohio St. 516, 9 N. E. 228. There was nothing in this defense which in any way tended to vary or contradict the terms of the written contract. The warranty was, defendants "do hereby guarantee said computing scale to weigh correctly." This certainly did not imply that the scale had been tested and adjusted by the city inspector and his certificate issued to that effect. It was the duty of the plaintiff, under the law, to have an inspection made by that officer before the plaintiff was authorized to use the scale. If he had done so, the scale would have been condemned and he could have rescinded the sale and recovered his money back before any loss had accrued to him. This was clearly his duty and his remedy. Furthermore, the rule in construing contracts of this kind is:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such

breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of the breach of it." 30 Am. & Eng. Ency. Law (2d ed.), p. 209.

See, also, *Puget Sound Iron & Steel Works v. Clemmons*, 32 Wash. 36, 72 Pac. 465. It is unreasonable to suppose that the contract of warranty above set out contemplated that the appellant should be liable for mistakes and underweights for a period of four months and for more than five thousand sales. Such damages did not arise naturally, nor were they in contemplation of the parties when the contract was made. But, conceding that there was a breach of warranty and that respondent was entitled to some damages,

"The buyer owes an active duty to exercise ordinary care in order to render the damages arising from the breach of warranty as light as possible; he cannot recover for expenses or losses unnecessarily incurred, nor for any damages of which his own negligence was the proximate cause. If by the exercise of ordinary care the damages might have been prevented, the measure of the buyer's recovery is the reasonable cost and expense of exercising such care, whether he exercised it or not." 30 Am. & Eng. Ency. Law (2d ed.), 223.

Ordinary care would have discovered the error in these scales before they were used at all. A mere compliance with the city ordinance would have discovered the error. In either view of the case, upon the facts found, the plaintiff was entitled to recover back only the money he had paid on the purchase price.

The judgment is therefore reversed and the cause remanded with instructions to enter a judgment in favor of the respondent for $43. The appellants are allowed their costs of this appeal.

HADLEY, C. J., CROW, FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, J.—I concur on the second ground stated in the opinion.