[L.A. No. 29774. In Bank. Oct. 29, 1970.]

ROBERT J. SWENSON et al., Plaintiffs and Appellants, v. JAMES S. FILE, Defendant and Respondent.

**COUNSEL**

Gibson, Dunn & Crutcher and John L. Endicott for Plaintiffs and Appellants.

McCutchen, Doyle, Brown & Enersen and Richard Murray as Amici Curiae on behalf of Plaintiffs and Appellants.

Robert M. Fisk, Richards, Watson & Hemmerling and Glenn R. Watson for Defendant and Respondent.

## OPINION

BURKE, J.—Plaintiffs appeal from a judgment in defendant's favor in an action for damages for breach of a covenant not to compete. We have concluded that defendant did not breach the covenant, at least to the extent it is legally enforceable, and that the trial court's judgment should be affirmed.

Plaintiffs and defendants were partners in an accounting firm transacting business from offices in Pasadena and Azusa, in Los Angeles County. Various differences arose between the parties and on October 5, 1961, defendant voluntarily withdrew from the partnership and opened his own accounting practice, with offices in South San Gabriel and Arcadia, also in Los Angeles County. During the five-year period from October 5, 1961, to October 5, 1966, defendant performed accounting services in South San Gabriel and Arcadia for several former clients of the partnership, and for several persons having Pasadena addresses. Defendant also rendered services in Pasadena to one client, Engineering Unlimited, whose business defendant had obtained while that company was located in Arcadia, prior to moving its offices to Pasadena, and whose billings during the five-year period amounted to no more than 1.2 percent of defendant's total billings. Defendant performed no accounting services in Azusa during this period.

The covenant at issue was contained in subsection J of section 18 of the revised partnership agreement dated October 1, 1960, and provided in pertinent part as follows:

"(J) In consideration of the payments to be made to a retiring partner under the terms of this AGREEMENT, . . . a retiring partner agrees that for a period of five years from the date of his retirement he will enter into the practice of public accountancy only subject to the following restrictions:

"(1) The retired partner will not render service to a client which is or has been a client of the partnership within the last three years prior to the retirement of the retired partner.

"(2) The retired partner will not render service to a client which has its principal office within a radius of twenty miles from any partnership office which existed on the date of his retirement. . . .

"(3) . . . . . . . . . . . . . . . . . .

"(4) In the event of breach of this Subsection (J) of this Section Eighteen (18), the offending partner shall be liable to the partnership for the full amount of fees collected or collectible from such prohibited clients."

The foregoing covenant, which forms the basis for plaintiffs' action herein, was subject to certain provisions of the Business and Professions Code pertaining to restraints of trade. Section 16600, which was enacted in 1941 and was based upon substantially identical language in former Civil Code section 1673, provides that "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Section 16602 creates a limited exception in the case of partnerships. As it stood in 1960, when the revised partnership agreement with defendant was executed, section 16602 provided that "Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town or a specified part thereof, where the partnership business has been transacted."

Section 16602 was amended effective September 15, 1961, a few weeks prior to defendant's withdrawal from the partnership. As amended, that section provides that "Any partner may, upon or in anticipation of a dissolution of the partnership, agree that he will not carry on a similar business within a specified county or counties, city or cities, or a part thereof, where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein."

Thus, the 1961 amendment to section 16602 broadened the permissible geographic scope of covenants not to compete from "the same city or town or a specified part thereof," to "a specified county or counties, city or cities, or a part thereof."[1]  ▮  Defendant contends, and the trial court

---

[1]A comparable provision, section 16601, has at all times material hereto permitted persons selling goodwill of a business to agree with the buyer "to refrain from carrying on a similar business within a specified county or counties, city or cities, or a part thereof, in which the business so sold . . . has been carried on. . . ." Although the territorial limits under section 16601 are wider than under former section 16602, the section does not apply to partnerships. (*Anderson Crop Dusters, Inc.* v. *Matley,* 159 Cal.App.2d 811 [324 P.2d 710]; *DuBois* v. *Padgham,* 18 Cal.App. 298 [123 P. 207].)

Nor can we accept the argument asserted by amici herein that former section 16602

held, that former section 16602 governed the rights of the parties under the revised partnership agreement since the agreement was executed prior to the amendment of that section. We agree with this position. As a general rule, " 'all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.' " (*Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union*, 45 Cal.2d 764, 771 [291 P.2d 433].) However, laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties. (See *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 148-149 [23 Cal.Rptr. 592, 373 P.2d 640]; *Equitable Bldg. & Loan Assn.* v. *Wolfangle*, 111 Cal.App. 119, 123 [295 ⊃. 388].)

In the *Interinsurance* case, the insured contended that an exclusionary clause in his automobile liability policy was invalid under the law existing when the policy was issued; the insured argued that an amendment to the Vehicle Code, effective shortly before the collision occurred, had changed the law and validated the clause. We held that, assuming the amendment did change the public policy of this state, nevertheless that amendment would not validate an exclusionary clause which was invalid when the policy was issued. We noted in *Interinsurance* that "Corbin states the proper rule as follows: '. . . a bargain that is illegal and void by reason of a statute existing at the time of making is not validated and made enforceable by the subsequent repeal of the statute. Such a rule as this is actually applied, and properly so, if the statute prohibited the making of such a bargain for reasons of public policy as conceived by the legislature.' (6 Corbin, Contracts (1951) p. 1043.) Other outstanding authorities agree [citations]."[2] (58 Cal.2d at p. 146; see also *Kaplan* v. *Nalpak Corp.*, 158 Cal.App.2d 197, 203 [322 P.2d 226], and *Mahlstedt* v. *Fugit*, 79 Cal. App.2d 562, 566 [180 P.2d 777], each involving contracts in restraint of trade.)

---

was intended to apply only to situations wherein, upon dissolution, none of the partners was to carry on the partnership business in its former location. The cases have uniformly interpreted former section 16602 or its predecessor, Civil Code section 1675, to sanction an agreement between the partners that upon the withdrawal of a partner from the firm he would not carry on a competing business in the same city or town. (See *Edwards* v. *Mullin*, 220 Cal. 379 [30 P.2d 997]; *Anderson Crop Dusters, Inc.* v. *Matley, supra*, 159 Cal.App.2d 811; *DuBois* v. *Padgham, supra*, 18 Cal.App. 298.) Any ambiguity caused by the use of the word "none" in former section 16602 was removed by the 1961 amendment.

[2]Corbin's discussion of the matter is presently contained in 6A Corbin, Contracts, section 1532.

Plaintiffs argue that the foregoing rule only applies to "illegal" contracts, and suggest that covenants not to compete are neither illegal nor against public policy, but are merely voidable or unenforceable to the extent their provisions exceed statutory limits. Initially, any distinction between void and voidable contracts in this regard presumably was laid to rest in the *Interinsurance* case, wherein this court stated that "Whether it be the rule in this state that an unlawful contract is void [citation] or only unenforceable [citation] the law here is, and should be, that a contract, or provision in a contract, which contravenes public policy when made is not validated by a later statutory change in that public policy. [Citations.]" (58 Cal.2d at p. 148.)

Secondly, the opinions in the early cases cited by plaintiffs (*City Carpet etc. Works* v. *Jones,* 102 Cal. 506, 511 [36 P. 841], and *Brown* v. *Kling,* 101 Cal. 295, 299 [35 P. 995]), no longer stand as authoritative statements regarding the public policy of this state with respect to contracts in restraint of trade. ■ As stated in *Pacific Wharf etc. Co.* v. *Standard American Dredging Co.,* 184 Cal. 21, 24-25 [192 P. 847], "The rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy." (See also *Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104, 110 [148 P.2d 9]; *Morey* v. *Paladini,* 187 Cal. 727, 736-738 [203 P. 760].) Accordingly, we believe that in making such contracts "void" to the extent they exceed statutory limitations (Bus. & Prof. Code, § 16600), the Legislature thereby adopted a rule of public policy akin to the statutory provision involved in the *Interinsurance* case.[3]

Plaintiffs further contend that since the covenant not to compete did not come into "full force and operation" until October 5, 1961, when defendant withdrew from the partnership, therefore amended section 16602 should apply. Plaintiffs argue that the parties could have simply reexecuted the partnership agreement immediately prior to defendant's withdrawal, thereby incorporating the 1961 amendment by operation of law. This argument fails to take into account the rationale underlying the general rule which incorporates into contracts existing, but not subsequent, law. The parties are presumed to have had existing law in mind when they executed their agreement (*Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union, supra,* 45 Cal.2d 764, 771); to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions. (See

---

[3]Plaintiffs also rely upon certain cases involving changes in the usury laws. As we stated in the *Interinsurance* case, *supra,* "Cases relating to usury are generally recognized as an exception to the rule that a contract illegal when entered into is not validated by a subsequent repeal of a law. [Citations.]" (58 Cal.2d at p. 148.)

*Equitable Bldg. & Loan Assn.* v. *Wolfangle, supra,* 111 Cal.App. 119, 122-123.) We recognize that the parties could have originally agreed to incorporate subsequent changes in the law, or could have reexecuted their agreement to accomplish this purpose, but there is no evidence that they did so in this case.

■ Having concluded that former section 16602 is applicable herein, it is apparent that the provisions of that section substantially restrict the scope and effect of defendant's covenant not to compete. However, section 16602 does not invalidate that covenant in its entirety, for under section 16600 a contract in restraint of trade is only "to that extent void." Thus, the rule of severability may be invoked to uphold defendant's covenant to the extent that it falls within the limits permitted by section 16602. (See Civ. Code, § 1599; *Martinez* v. *Martinez,* 41 Cal.2d 704, 706 [263 P.2d 617]; *Edwards* v. *Mullin, supra,* 220 Cal. 379, 382; *Kaplan* v. *Nalpak Corp., supra,* 158 Cal.App.2d 197, 202-203; *Mahlstedt* v. *Fugit, supra,* 79 Cal.App.2d 562, 566-567; 6A Corbin, Contracts, § 1390.)

On its face, subsection J(1) of the covenant would be invalid in its entirety, since it forbids defendant from serving former partnership clients without regard to territorial limits. Although, as plaintiffs contend, that subsection could be construed as enjoining defendant from soliciting or "stealing" plaintiffs' clients, neither the pleadings nor the proof indicate that defendant did so, or that the names of plaintiffs' clients were comparable to a confidential customers' list or other trade secret properly entitled to protection from defendant's competition. (See *Fortna* v. *Martin,* 158 Cal.App.2d 634, 638 [323 P.2d 146]; *Morris* v. *Harris,* 127 Cal.App.2d 476, 478 [274 P.2d 22]; cf. *Gordon* v. *Landau,* 49 Cal.2d 690 [321 P.2d 456].)

However, both subsection J(1), pertaining to former clients, and subsection J(2), pertaining to any client having its principal office within a radius of 20 miles from the partnership offices, may be upheld to the extent that serving such clients would also constitute, under former section 16602, "carrying on" an accounting business within the Cities of Pasadena or Azusa, where the partnership offices are located.[4] But neither subsection may validly be construed as enjoining defendant from serving clients, regardless of the location of their offices, unless defendant "carries on" business with those clients in Pasadena or Azusa. Therefore, we must

---

[4]Former section 16602 referred to "the same city or town . . . where the partnership business was transacted." In the instant case, plaintiffs' offices were located in both Pasadena and Azusa. However, in view of our holding that defendant did not carry on an accounting business in either city, we need not consider whether that section would have permitted a restraint encompassing two or more cities or towns.

determine whether the trial court properly found that defendant did not carry on an accounting business in those cities.

The record shows that defendant had no accounting office in either Pasadena or Azusa, that he performed no accounting services in Azusa, and that he had no clientele from Azusa. However, defendant did perform services in Pasadena for one client located in that city, and he served several other Pasadena clients from his offices in South San Gabriel and Arcadia. Defendant contends that the phrase "carry on a similar business" in former section 16602, as applied to an accounting business, refers only to business conducted in the city or cities in which the covenantor's offices are located. Since defendant maintained no office in Pasadena, he argues that he carried on no business in that city.

Without attempting to fashion a rule of general application, we believe that defendant's construction of former section 16602 is too restrictive, for it would permit the covenantor to set up his office just beyond city limits and thereupon actively solicit business and perform services within the covenantee's city with impunity. As Corbin states, "When a business is sold with its goodwill and the seller agrees not to open a competing business within the same city or the same county, it is a reasonable interpretation to find that the contract prohibits opening of a competing business just outside the city or county limits for the purpose of enticing old customers within those limits. . . ." (6A Corbin, Contracts, § 1386, at p. 54.) At common law, a restraint against competition was valid to the extent reasonably necessary for the protection of the covenantee. (*Id.*, § 1387, at pp. 55-56, § 1393, at p. 87; Rest., Contracts, § 515, subd. (a).) We may assume that in enacting former section 16602 the Legislature intended to embody the common law concept of reasonableness (see *City Carpet etc. Works* v. *Jones, supra,* 102 Cal. 506, 511), and accordingly the term "carry on a similar business" should be interpreted more broadly than merely referring to the physical location of the covenantor's office or plant.

Thus in *Kaplan* v. *Nalpak Corp., supra,* 158 Cal.App.2d 197, 203, the court was called upon to construe section 16601 of the Business and Professions Code which, under circumstances involving the sale of goodwill, permits restraints upon "carrying on a similar business" within the cities or counties in which the business sold was carried on. In *Kaplan,* the court held that "the selling of . . . products in substantial amounts involved the carrying on of business in the counties where such sales were made," thereby rejecting the contention that a business is only carried on where the covenantor's plant, warehouse, store or other physical structures were located. (See also *Martinez* v. *Martinez, supra,* 41 Cal.2d 704, 707, holding that section 16601 authorizes enjoining the covenantor from "either

directly or indirectly carrying on or conducting in San Diego County a ship supply business similar" to the business sold by him.)

On the other hand, we do not believe that the Legislature intended former section 16602 to sanction restraints upon all business transactions of whatever character, regardless of their noncompetitive effect, their insubstantial nature, or their infrequent occurrence. Instead, we have concluded that in using the words "carry on a similar business," the Legislature had in mind the direct or indirect transaction or solicitation of substantial business activities in competition with the covenantee (see *Kaplan* v. *Nalpak Corp., supra,* 158 Cal.App.2d 197, 203), rather than the occurrence of isolated, occasional transactions not substantially affecting the covenantee's competitive position.[5]

Judged by the foregoing standards, it seems apparent that defendant did not carry on an accounting business in the City of Pasadena within the meaning of former section 16602. The fact that some of defendant's clients had Pasadena addresses would not, of itself, establish that proposition, and plaintiffs offered no evidence that defendant performed in Pasadena any services, substantial or otherwise, for those clients or actively solicited their business. Nor do we think that defendant carried on business in Pasadena merely by performing occasional services in that city for a single client whose plant was moved from Arcadia to Pasadena after it had retained defendant. Aside from the insubstantial and isolated nature of the transaction, we cannot interpret former section 16602 as requiring the covenantor to discontinue serving a client merely because that client has moved its plant to within the proscribed territory.

Having concluded that defendant did not breach the legally enforceable portions of his covenant not to compete, we need not consider defendant's further contention that subsection J(4) of the covenant, which purported to assess liquidated damages for defendant's alleged breach, was an unenforceable penalty clause.

The judgment of the trial court is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[5]Ordinarily, a single, isolated transaction does not constitute "carrying on business" under statutes using that or similar terminology. (See cases cited in 6 Words and Phrases, pp. 325-326.)